UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JIN YUE YOU, as Administrator of the
ESTATE of KA CHOR YAU, Decedent,

       Plaintiff,

  -v-                                               No.  17 CV 6028-LTS-KNF

PEDRO TEIXEIRA, INC. and MAYKEL
FELIZ-TEJEDA,

       Defendant.

--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       This action arises out of a motor vehicle accident that resulted in the death of Mr. Ka Chor Yau ("Mr. Yau" or "Decedent").  Jin Yue You, as Administrator of the Estate of Ka Chor Yau ("Ms. You" or "Plaintiff"), brings this action against Defendants Pedro Teixeira, Inc. and Maykel Feliz-Tejeda ("Mr. Tejeda") (collectively, "Defendants"), asserting claims of negligence and wrongful death.  Plaintiff commenced this action in the Supreme Court of the State of New York for New York County.  On or about August 9, 2017, Defendants removed the action to this Court.  (See docket entry no. 1.)  The Court has jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. § 1332.

       Defendants move for summary judgment, seeking to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 56.  (See docket entry no. 22 (the "Motion").)  The Court has reviewed the parties' submissions thoroughly, and, for the following reasons, Defendants' motion for summary judgment is denied in its entirety.

BACKGROUND

The following facts are undisputed unless otherwise noted.[1] On July 17, 2015, Ka Chor Yau, an 83-year old man, was struck and killed by a truck on the Manhattan side of the Manhattan Bridge in New York City (the "Accident"). (Def. 56.1 St. ¶ 1; Pl. 56.1 St. ¶ 55.) The Accident occurred near the intersection of Canal Street and Bowery Street around 12:30 p.m. (Def. 56.1 St. ¶¶ 2, 22.) Before he was hit, Mr. Yau was crossing Canal Street approximately 148-200 feet from the nearest cross walk. (Id. ¶¶ 3-4.)

Mr. Feliz-Tejeda ("Mr. Tejeda") was driving the vehicle that struck Mr. Yau, a green, four axle dump truck with 12 wheels, in the course of his employment as a driver for Pedro Teixiera, Inc. (Def. 56.1 St. ¶¶ 12-21.) Mr. Tejeda had begun working for Pedro Teixeira approximately two to three months prior to the Accident. (Def. 56.1 St. ¶ 13.) Mr. Tejeda's job was to haul dirt from a construction worksite in Brooklyn, New York to a location in New Jersey, where the dirt was deposited. (Id. ¶¶ 14-15.) The Accident occurred during Mr. Tejeda's second trip from Brooklyn to New Jersey that day. (Id. ¶¶ 19-20.)

Just prior to the accident, Mr. Tejeda was driving across the bottom level of the Manhattan Bridge and approached the three-lane intersection where Canal Street met Bowery Street, with cars on his right. (Id. ¶¶ 22-23.) Mr. Tejeda stopped at a red light behind other cars. (Id. ¶ 25; Pl. 56.1 St. ¶ 70.) While waiting for the light to change, Mr. Tejeda testified, he was not on his phone or texting; he was simply looking to the front for pedestrians. (Def. 56.1 St. ¶¶ 24-25.) Once the light turned green, Mr. Tejeda began driving. (Id. ¶ 26.) He realized he was in

---

[1] Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no nonconclusory contrary factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Pl. 56.1 St." or "Def. 56.1 St.") incorporate by reference the parties' undisputed citations to the underlying evidentiary submissions.

an accident when he felt the truck go over something, at which point he looked in his rearview mirror and saw a person on the ground. (Id. ¶ 27.) At the time he felt the bump, Mr. Tejeda's truck was traveling at a speed of approximately five to ten miles per hour. (Id. ¶ 28.)

New York City Police Department ("NYPD") Traffic Enforcement Agent Mark McLean witnessed the Accident. (Pl. 56.1 St. ¶ 60.) According to Agent McLean, Mr. Yau "was moving very slowly" while crossing the street. (Pl. 56.1 St. ¶ 65.) Additionally, NYPD secured local surveillance footage documenting the moments and circumstances surrounding the Accident. (See Affidavit of James M. Strauss in Support of Defendants' Motion for Summary Judgment, docket entry no. 22 ("Strauss Aff."), at Exh. B.) The NYPD concluded, after investigating the Accident, that it had been the sole fault of Mr. Yau, the pedestrian. (Strauss Aff. at Exh. C at D077). Defendants proffer the expert testimony of John C. Scott, an accident reconstruction expert, who concludes that Mr. Tejeda would have had one second in which he could have seen Mr, Yau before the impact. (Strauss Aff. at Exh. L at 19.) Plaintiff proffers the expert testimony of Robert E. Genna, M.S., an expert in the field of collision reconstruction analysis, who concludes that Mr. Yau could have been seen from an angle that the NYPD did not analyze, potentially for a longer period of time before the Accident. (See Affidavit of Stephen D. Wagner III in Opposition to Defendants' Motion for Summary Judgment, docket entry no. 30 ("Wagner Aff."), at Exh. 9.)

## DISCUSSION

The standard governing motions for summary judgment is well settled. Summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit

under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotations omitted).  In evaluating a motion for summary judgment, a court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

   The parties dispute whether Mr Yau's accident was primarily attributable to Mr. Tejeda's negligence in sufficiently paying attention to pedestrian traffic, or to Mr. Yau's failure to cross Canal Street within a demarcated cross walk.  In order to prevail in a negligence action under New York law, a plaintiff must establish: 1) the existence of a duty owed to the plaintiff by the defendant; 2) a breach of that duty; and 3) injury to the plaintiff substantially caused by that breach.  Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002).

   Both drivers and pedestrians must abide by New York's Vehicular and Traffic Laws ("VTL").  "Drivers must use due care to avoid colliding with any pedestrian."  VTL § 1146(a).  The duty to exercise due care requires a driver to "exercise the degree of care of a reasonably prudent driver, and does not impose on drivers a duty to avoid an accident no matter what the circumstances might be."  Perez v. United States, 1993 U.S. Dist. LEXIS 5935, at *1 (S.D.N.Y. May 4, 1993).  A driver's negligence is established where an accident occurred because the driver "failed to see that which through the proper use of his or her senses he or she should have seen."  Katanov v. City of Nassau, 91 A.D.3d 723, 725 (2d Dept. 2012).  Generally, whether a driver has conformed to the requisite standard of due care is a question of fact necessitating a trial.  See St. Andrew v. O'Brien, 45 A.D.3d 1024, 1028 (3d Dept. 2007).

As part of their duties, pedestrians must not "suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impractical for the driver to yield." VTL § 1151(b).  Where a pedestrian crosses a roadway outside of a demarcated cross walk, the pedestrian "shall yield the right of way to all vehicles upon the roadway." VTL § 1152(a).  A pedestrian who "crosses a street at a place where there is no regular crossing may be chargeable with some additional vigilance because it is not a place set aside for the crossing of foot passengers . . ." Perez, 1993 U.S. Dist. LEXIS 5935, at *7 (internal quotation marks omitted).  However, under New York's pure comparative negligence system, culpable conduct attributable to a claimant does not bar recovery.  N.Y. C.P.L.R. § 1411.  Even where a pedestrian does not use a cross walk, drivers must be "watchful and careful." Perez, 1993 U.S. Dist. LEXIS 5935, at *7.

The parties' dispute regarding whether Mr. Tejada had sufficient time to see and avoid striking Mr. Yau before moving his truck forward precludes summary judgment in favor of Defendants.  While both parties concede Mr. Yau's fault in crossing Canal Street outside of a demarcated cross walk, Plaintiff argues that Mr. Tejada was negligent in failing to see what there was to be seen—Mr. Yau approaching the right corner of Mr. Tejeda's vehicle before Mr. Tejeda moved his truck forward.  Among other evidence, Ms. You points to the eye witness testimony of Agent McLean, who testified that Mr. Yau was walking "very slowly."  She also proffers two sight alignment tests conducted by Plaintiff's collision reconstruction expert, who concludes that Mr. Tejada could have seen a person of Mr. Yau's height approximately one to two feet off the right front corner of the vehicle.  Plaintiff argues that Mr. Tejeda, who has driven the same route twice a day for at least two months, should have known that the area was heavily populated with

pedestrians and, therefore, failed to exercise sufficient vigilance for the slowly approaching Mr. Yau.

In contrast, Defendants argue that Mr. Tejeda was paying sufficient attention to pedestrian traffic, and could not have avoided the Accident.  Defendants proffer Mr. Tejeda's testimony that he was dutifully paying attention to the road while waiting for the light to change, looking for pedestrians crossing the road in front of his truck, and driving only five to ten miles per hour at the time of the Accident.  Defendants submit that the surveillance footage shows Mr. Yau jogging or moving quickly across Canal Street outside of a demarcated cross walk while traffic was moving.  Defendants also point to the NYPD's investigative report, which concluded the Accident was solely a result of pedestrian error, in support of their argument.  The parties' disputes concern material facts that bear on whether or not Mr. Tejeda should have seen Mr. Yau before the Accident occurred, and are primarily based on inconclusive surveillance footage, witness testimony and factual analyses that are subject to interpretation.  Accordingly, the issue of whether Mr. Tejeda failed to see what there was to be seen is a question of fact properly left to a trier of fact to determine.

Defendants further argue that even if Mr. Tejeda did see Mr. Yau, at most it would have been for "one second of time," which, as a matter of law, is an insufficient length of time to create a question of fact as to Defendants' liability for the Accident.  The cases Defendants cite in support of their argument are unpersuasive in light of their procedural posture and the evidence here, construed in the light most favorable to the Plaintiff.  For example, in Brown v. Muniz, a divided court affirmed the trial court's grant of summary judgment in favor of the defendant driver where "the uncontradicted evidence" on the record, including consistent testimonies of both the driver and the plaintiff, confirmed "that the driver did not see the plaintiff

leave the sidewalk and enter the street" before the collision.  61 A.D.3d 526, 529 (2009); see also Perez v. United States, supra (determining, after a bench trial on liability, that "there was not a scintilla of evidence" that the defendant driver failed to exercise his duty of due care where he was driving 20 to 25 miles per hour, saw the pedestrian one and a half to two seconds prior to impact, sounded his horn, and swerved in an unsuccessful attempt to avoid collision); Miller v. Sisters of Order of St. Dominic, 262 A.D.2d 373, 374 (1999) (granting defendant's motion for summary judgment where there was "no evidence" on the record that defendant operated the car in a negligent manner, and it was "uncontested" that neither the defendant, nor the two eyewitnesses in her car, saw the plaintiff until one or two seconds prior to collision.).

   Further, in making its decision, the Brown court explicitly refused to take judicial notice of the "fact" that a driver can react to an emergency situation in less than a second because "fairness may require" that the parties have the "opportunity to be heard" on such an issue.  Id. at 528.  The court also concluded that whether human reaction time is a subject of which a New York court may take judicial notice is unclear, and, that "New York authority cuts against taking judicial notice of driver reaction time."  Id.  (citing Murray v. Donlan, 77 A.d.2d 337 (1980), appeal dismissed, 52 NY2d 1071 (1981) (court cannot take judicial notice of stopping distance of an automobile traveling at certain rate of speed.)).  Accordingly, Defendants are not entitled to a judgment as a matter of law on the issue of negligence.

## CONCLUSION

   For the foregoing reasons, Defendants' motion for partial summary judgment is denied.  The final pretrial conference in this case is scheduled for September 18, 2020, at 12:00 p.m. The parties are directed to contact Magistrate Judge Fox's chambers promptly to arrange for a settlement conference and, if a settlement is not concluded promptly, to consult and make

their submissions in advance of the final pretrial conference in accordance with the schedule set forth in the Pre-Trial Scheduling Order (docket entry no. 21). This case remains referred to Magistrate Judge Fox for general pretrial management.

This memorandum opinion and order resolves docket entry no. 22.

SO ORDERED.

Dated: New York, New York
May 26, 2020

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge